02-816 JMR/RLE

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 03-3658

---

| | | |
|---|---|---|
| Timothy Gamradt; Carla Gamradt, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Federal Laboratories, Inc.; Mace | * | |
| Securities International; Defense | * | |
| Technology Corporation of America, | * | |
| | * | |
| Appellees. | * | |

---

Submitted: June 14, 2004
Filed: August 25, 2004

---

Before LOKEN, Chief Judge, and HEANEY and BYE, Circuit Judges.

---

HEANEY, Circuit Judge.

Timothy and Carla Gamradt appeal from the district court's adverse grant of summary judgment. We affirm in part and reverse in part.

## BACKGROUND

On June 2, 1998, Timothy Gamradt, a prison guard, was involved in a training exercise at the Federal Prison Camp in Duluth, Minnesota. Gamradt took part in a

SCANNED
SEP 20 2004
U.S. DISTRICT COURT MPLS

staged scenario in which some staff, acting as prisoners, rebelled by taking hostages and holding them in a deserted building. To aid in the simulation, several devices were approved for use by the role players, including high-powered paint guns, flash-bang grenades (grenades that made a loud bang sound when detonated), and black smoke grenades (grenades that emitted a black smoke-like substance). Gamradt's team of responders were tasked with securing the building in which the hostages were being held. His team cleared the first floor of the building, but were fired upon by the prisoners as they approached the second floor via the stairwell. The drill called for the use of a flash-bang grenade in order to disperse the prisoners on the second floor. Since none were available, Gamradt's supervisor gave the order to activate a black smoke grenade. None of the guards were wearing gas masks, or any other protective devices, to shield them from the pyrotechnic smoke. The black smoke grenade was intended to be detonated in the second floor hallway. Instead, the grenade hit a concrete wall and fell back into the stairwell, near Gamradt's team. Gamradt was one of fourteen participants who was affected by smoke inhalation – at least seven of whom sought medical treatment. He has suffered from shortness of breath, persistent coughing, and a 60% permanent loss in his aerobic capacity.

Gamradt and his wife, Carla Gamradt, filed suit against Federal Laboratories, Inc., Mace Securities International, and Defense Technology Corporation of America (DTCA), alleging the manufacturers failed to warn of the dangers associated with activating a black smoke grenade in an enclosed area. After the parties stipulated to dismissing Federal Laboratories, Inc., and Mace Securities International as defendants, DTCA moved for summary judgment arguing that it could not be held liable because it did not manufacture or sell the black smoke grenade at issue. Rather, Defense Technology Corporation of America of Casper, Wyoming (DTCA-Wyoming) manufactured and sold the black smoke grenade to the United States Bureau of Prisons. DTCA acquired DTCA-Wyoming after the sale of the grenade had occurred. DTCA admitted, solely for the purposes of the summary judgment

motion, that the black smoke grenade was manufactured by DTCA-Wyoming and that the black smoke grenade displayed no warning regarding use indoors.

The district court found that a genuine issue of material fact remained as to the existence of a de facto merger between DTCA and DTCA-Wyoming; a fact which, if proven at trial, could open up DTCA to liability for defective products manufactured and sold by DTCA-Wyoming. The district court granted summary judgment to DTCA, however, on alternate grounds. Sua sponte, the court found that the dangers raised by the black smoke grenade were open and obvious, relieving a manufacturer of its duty to warn of reasonably foreseeable dangers. In addition, the court found that DTCA was not compelled to warn the Bureau of Prisons about DTCA-Wyoming's products because DTCA did not have knowledge of a defect, nor did it have knowledge of the product's location; both of which are factors when imposing liability on a successor corporation in a failure to warn case. The Gamradts appeal. We affirm in part and reverse in part.

## ANALYSIS

We review the district court's determination of state law, its conclusions of law, and its grant of summary judgment de novo. See Liberty Mut. Ins. Co. v. FAG Bearings Corp., 335 F.3d 752, 757 (8th Cir. 2003); Boerner v. Brown & Williamson Tobacco Corp., 260 F.3d 837, 841 (8th Cir. 2001). After evaluating the facts in the light most favorable to the nonmoving party, if no genuine issue of material fact remains, summary judgment is appropriate. Id.; Fed. R. Civ. P. 56(c). We apply the substantive law of Minnesota in this diversity case.[1] Karjala v. Johns-Manville Prods. Corp., 523 F.2d 155, 158 n.4 (8th Cir. 1975) (relying on the substantive law of

---

[1]The Gamradts urged the district court to adopt New York law as the substantive law of the case. The district court declined to do so, however, and the Gamradts do not appeal that determination.

Minnesota, the forum state, in a product liability case). This court can affirm the district court's grant of summary judgment on any ground supported by the record. Habib v. NationsBank, 279 F.3d 563, 566 (8th Cir. 2001). Here, the district court granted summary judgment on two independent grounds; we review each in turn.

## A. Open and Obvious Danger

Under Minnesota law, a manufacturer has a duty to warn consumers of reasonably foreseeable dangers. Huber v. Niagara Mach. & Tool Works, 430 N.W.2d 465, 467 (Minn. 1988); Harmon Contract Glazing, Inc. v. Libby-Owens-Ford Co., 493 N.W.2d 146, 151 (Minn. Ct. App. 1992). This duty is relieved, however, when the danger the product poses is open and obvious. Indep. Sch. Dist. No. 14 v. AMPRO Corp., 361 N.W.2d 138, 143 (Minn. Ct. App. 1985). Whether a manufacturer has a duty to warn is a question of law decided by the court. Germann v. F.L. Smithe Mach. Co., 395 N.W.2d 922, 924 (Minn. 1986) ("The question of whether a legal duty to warn exists is a question of law for the court – not one for jury resolution.").

The district court found that DTCA was not obligated to warn users[2] of the dangers of using a black smoke grenade indoors because the dangers are open and obvious. We disagree. Knowledge of the general danger associated with minor smoke inhalation is not enough to relieve the manufacturer of its duty to warn about foreseeable dangers associated with indoor use of a black smoke grenade. Cf. Willmar Poultry Co. v. Carus Chem. Co., 378 N.W.2d 830, 835 (Minn. Ct. App. 1985) ("Past experience with a product, however, does not necessarily alert users to all of the dangers associated with the product."). The specific risk of permanent

[2]We note that even though Gamradt did not activate the black smoke grenade, the manufacturer's duty extends to "any person who may reasonably be expected to be in the vicinity of [the product's] use." McCormack v. Hankscraft Co., 154 N.W.2d 488, 496 (Minn. 1967).

respiratory damage posed by using the black smoke grenade indoors must have been obvious to the user.

In AMPRO, a school district sued the manufacturer of foam landing mats after two school children lighted the mats on fire. The students intended to "make a little smoke," but instead the mats "burned very rapidly, with intense heat, and emitted black, dense smoke." 361 N.W.2d at 141. In finding that the dangers posed by igniting the mats were not open and obvious, the Minnesota Court of Appeals noted:

> [The defendants], however, fail to distinguish ordinary burning from the hot, rapid, smoky burning of which [the plaintiff] presented evidence. This is a different, more serious, and more unexpected danger than that posed by ordinary flammable items. Such a danger is not obvious, and while [the plaintiff] admitted knowing that [the mats] might burn, it indicated no knowledge of the speed or intensity with which they burned.

Id. at 143.

In this case, while it may be obvious that a black smoke grenade may emit an opaque gas, and it may be obvious that the substance could cause minor discomforts, we do not think it is obvious that a person could permanently lose 60% of his aerobic capacity as a result of being exposed to a black smoke grenade that was detonated indoors. According to the black smoke grenade's Material Safety Data Sheet, a document provided by the manufacturer, the hazardous ingredients contained in the grenade are: zinc oxide, hexachloroethane, and aluminum powder. In the health hazards section of the same form, the symptoms of exposure include "in high concentrations . . . a narcotic effect," and potential kidney and liver damage. (J.A. at 14.) We do not think that the exact nature and effects of the smoke-causing agents contained in the black smoke grenade, as detailed by the Material Safety Data Sheet, are open and obvious.

After reviewing the record,[3] it appears that black smoke grenades serve a dual purpose: to disperse a crowd and to create a visual screen so that one's maneuvers are shielded from view. In order to assess the risk posed by using a black smoke grenade indoors, one must be able to discern how the black smoke grenade accomplishes these goals. One could easily conclude that the ingredients used to create the visual screen are not toxic, or even akin to smoke at all; or, that the dispersing qualities of the black smoke grenade are merely minor irritants caused by a light layer of smoke. Such a conclusion would have been incorrect in this case. Gamradt's injuries are proof that the hazardous materials contained in the black smoke grenade can cause permanent injuries if the grenade is detonated in a confined space. Quite obviously, the dangers posed by activating a black smoke grenade indoors are "different, more serious, and more unexpected" than the general dangers of detonating a black smoke grenade outdoors. AMPRO, 361 N.W.2d at 143.

**B. Successor Corporation's Duty To Warn**

We now must address what the district court terms as its alternative ground for granting summary judgment to DTCA. Under Minnesota law, a duty to warn can be imposed on a successor corporation only after considering the following, non-exhaustive, list of relevant factors: "Succession to a predecessor's service contracts, coverage of the particular machine under a service contract, service of that machine by the purchaser corporation, [and] a purchaser corporation's knowledge of defects

---

[3]Because the district court, sua sponte, chose the "open and obvious danger" ground as one of its bases for granting summary judgment, the parties did not have a chance to develop the record below as fully as they might have had they been given notice that this legal theory would decide the case. See Williams v. City of St. Louis, 783 F.2d 114, 116 (8th Cir. 1986) (stating that the district court should have given the plaintiffs notice of its intention to rely on a particular legal theory when that theory was not raised in defendant's summary judgment motion so that the plaintiffs could have a meaningful opportunity to respond). Given our view of the dangers based on the existing record, however, a remand on this issue is unnecessary.

and of the location or owner of that machine." Niccum v. Hydra Tool Corp., 438 N.W.2d 96, 100 (Minn. 1989). The crux of the inquiry is whether the successor corporation has benefitted economically from its relationship with the predecessor's customers. Restatement (Third) of Torts: Prods. Liab. § 13 cmt. b; Sherlock v. Quality Control Equip. Co., 79 F.3d 731, 734 (8th Cir. 1996) (applying Missouri law, which utilizes the same factors as Minnesota in determining whether the successor corporation is obligated to warn consumers of dangers from a predecessor's products); accord Leannais v. Cincinatti, Inc., 565 F.2d 437, 442 (7th Cir. 1977).

Focusing exclusively on the last two factors – whether DTCA had knowledge of defects in the black smoke grenades and knew where the grenades were sold – the district court found that the Gamradts had not proven DTCA had a duty to warn DTCA-Wyoming's customers of dangers posed by detonating a black smoke grenade indoors. We agree that the Gamradts have not created a genuine issue of material fact on this issue. To the district court and on this appeal, the only argument that the Gamradts advance is that after the sale of DTCA-Wyoming, DTCA had a copy of DTCA-Wyoming's customer list and the Material Safety Data Sheet for the black smoke grenade. These facts, however, do not demonstrate that DTCA had any kind of continuing, economically advantageous relationship with DTCA-Wyoming's customers. There is no indication that DTCA used the customer lists to their advantage – the only proof that DTCA possessed the customer lists is contained in the sale agreement.

More importantly, even if the Gamradts could prove that DTCA benefitted from DTCA-Wyoming's customer lists, there is no suggestion that DTCA was aware of the defect in the black smoke grenade. The defect, as alleged in the complaint, is the lack of warning on the grenade cautioning against inside use. In order for DTCA to be obligated to warn DTCA-Wyoming's customers of this defect, it would have to know that some of the black smoke grenades were not properly labeled. There is no

evidence to this effect. DTCA cannot owe a duty to warn about a defect it did not know existed. See Niccum, 438 N.W.2d at 100.

### C. De Facto Merger

Even though DTCA did not have an independent duty to warn DTCA-Wyoming's customers, that does not mean that DTCA escapes liability altogether. The district court found that an issue of fact was created as to whether a de facto merger between DTCA and DTCA-Wyoming occurred. If proven at trial, this could make DTCA liable for DTCA-Wyoming's failure to label the black smoke grenades with appropriate cautions regarding indoor use. While a successor corporation generally cannot be held liable for the debts and liabilities of the predecessor corporation, there is an exception "where the transaction amounts to a consolidation or merger of the corporation." J & B Co. v. Bellanca Aircraft Corp., 911 F.2d 152, 153 (8th Cir. 1990) (per curiam). Therefore, the nature of DTCA-Wyoming's sale to DTCA may have resulted in DTCA assuming liability for DTCA-Wyoming's failure to warn. A genuine issue of material fact on this issue remains.

## CONCLUSION

In sum, we find that the dangers associated with using a black smoke grenade indoors were not open and obvious; that DTCA did not have an independent duty to warn DTCA-Wyoming's customers of the dangers of using the black smoke grenade indoors; and, that an issue of fact remains as to whether DTCA could be liable for DTCA-Wyoming's failure to place a warning on the black smoke grenade.[4]

---

[4]We note that the issue of whether a warning was in fact affixed to the black smoke bomb remains undecided, as DTCA admitted only for purposes of this summary judgment motion that there was no warning.

Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

---



A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

MICHAEL E. GANS
Clerk of Court

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

September 15, 2004

Mr. Richard Sletten
Clerk
U.S. DISTRICT COURT, MINNESOTA
202 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415

Re: 03-3658 Timothy Gamradt vs. Federal Laboratories

Dear Clerk:

The mandate of this Court is being sent to the clerk of the district court, together with a receipt. The clerk of the district court is requested to sign, date, and return the receipt to this office.

Any district court records in this court's possession will be returned shortly.

(5175-010199)

Sincerely,

Michael E. Gans
Clerk of Court

RECEIVED
BY U.S. MAIL
2004 SEP 20 AM 9:24
CLERK, U.S. DIST COURT
MINNEAPOLIS, MN

paw

Enclosure

(LETTER FOR INFORMATIONAL PURPOSES ONLY)

---

cc: Honorable James M. Rosenbaum
Andrew Peter Engebretson
Steven J. Kirsch
Paul Robert Smith
Charles Bennett Bateman
Steven W. Schneider

District Court/Agency Case Number(s): CIV 02-816 JMR/RLE